UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BERTHA ELIZABETH MANIOLOS,                         :

        Plaintiff,                                     :

        -against-                                      :               10 Civ. 3383 (AJP)

UNITED STATES OF AMERICA,                          :

        Defendant.                                     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

WOODRUM C. BOLEY,                                  :

        Plaintiff,                                     :               10 Civ. 4467 (AJP)

        -against-                                      :

UNITED STATES OF AMERICA,                          :               **OPINION AND ORDER**

        Defendant.                                     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

        Plaintiffs Bertha Elizabeth Maniolos and Woodrum C. Boley bring these actions

alleging that the Internal Revenue Service ("IRS") wrongfully retained their economic stimulus

rebates issued in 2008.  (E.g., Maniolos Dkt. No. 2: Compl. ¶¶ 4-5; Boley Dkt. No. 1: Compl. ¶¶ 4-

5.)

Presently before the Court is defendant United States' motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  (Maniolos Dkt. No. 10: Gov't Notice of Motion; Boley Dkt. No.6: Gov't Notice of Motion.)  The Government contends that the tax offer in compromise plaintiffs entered into with the IRS in 2007 entitle the IRS to keep their economic stimulus rebates.  (Maniolos Dkt. No. 11: Gov't Br. at 1; Maniolos Dkt. No. 16: Gov't Reply Br. at 2; Boley Dkt. No. 7: Gov't Br. at 1; Boley Dkt. No. 9: Gov't Reply Br. at 2.)

The parties have consented to decision of these cases by a Magistrate Judge pursuant to 28 U.S.C. § 636(c).  (Maniolos Dkt. No. 8; Boley Dkt. No. 11.)

For the reasons set forth below, the Government's motions to dismiss are <u>GRANTED</u>.

## MANIOLOS FACTS

The relevant facts are undisputed.

While suffering through financial difficulties, Maniolos withdrew the contents of her tax-deferred retirement plans over several years without making sufficient provisions for withholding income tax.  (Dkt. No. 2: Compl. ¶ 7; Dkt. No. 11: Gov't Br. at 2; Dkt. No. 12: Maniolos Br. at 1-2.) As a result, by early 2007, Maniolos owed the IRS approximately $40,000 in income tax, penalties, and interest for the tax years 1994, 1996, and 1997.  (Compl. ¶ 7; Gov't Br. at 2; Maniolos Br. at 1.)

In mid-2007, Maniolos sought to satisfy her tax liabilities through a Form 656 offer in compromise ("OIC") with the IRS.  (Compl. ¶ 8; Gov't Br. at 2; Maniolos Br. at 2.)  On October 24, 2007, the IRS accepted Maniolos' OIC, which provided that Maniolos pay a total of $500 in satisfaction of her $40,000 tax liability. (Compl. ¶ 9 & Ex. A: OIC; Gov't Br. at 2; Maniolos

Br. at 2.)  In addition to the $500 payment, OIC section V(f) provided: "As additional consideration beyond the amount of my/our offer, the IRS will keep any refund, including interest, due to me/us because of overpayment of any tax or other liability, for tax periods extending through the calendar year in which the IRS accepts the offer."  (Compl. ¶ 11 & Ex. A: OIC; Gov't Br. at 1; Maniolos Br. at 2.)  On November 7, 2007, Maniolos made final payment of the $500 under the compromise.  (Compl. ¶ 12; Maniolos Br. at 2.)

In early 2008, Maniolos filed a tax return for 2007 listing gross income of $7,670.  (Compl. ¶¶ 13-14; Gov't Br. at 3; Maniolos Br. at 3.)  Due to her income level and allowable deductions, Maniolos was not liable for any income tax for 2007.  (Compl. ¶ 13; Gov't Br. at 3; Maniolos Br. at 3.)  Accordingly, Maniolos requested a refund of $2,097, the amount she had voluntarily withheld for taxes from her 2007 income.  (Compl. ¶ 14;  Gov't Br. at 3; Maniolos Br. at 3.) The IRS retained the money as it was considered "additional consideration" under OIC section V(f).  (Compl. ¶ 14; Gov't Br. at 3; Maniolos Br. at 3.)  Maniolos concedes that the IRS properly retained this money.  (Compl. ¶ 14; Gov't Br. at 3; Maniolos Br. at 3.)

On February 13, 2008, the Economic Stimulus Act ("ESA") of 2008 was signed into law.  (Compl. ¶ 15; Gov't Br. at 3; Maniolos Br. at 3; <u>see</u> page 11 below.)  Based on her income for 2007, Maniolos was entitled to a $300 refund under the ESA.  (Compl. ¶ 15; Gov't Br. at 3; Maniolos Br. at 3.)[1]  Rather than issuing Maniolos a check for $300, the IRS credited the money as a payment

---

[1]      Pursuant to 26 U.S.C. § 6428(a), Maniolos would have been entitled to a credit of the lesser
(continued...)

to Maniolos' unpaid 1997 income tax liability.  (Compl. ¶¶ 16-17; Gov't Br. at 3; Maniolos Br. at 3-4.)

On December 1, 2009, Maniolos submitted a claim for the $300 to the IRS.  (Compl. ¶ 18; Gov't Br. at 3.)  By letter dated February 2, 2010, the IRS notified Maniolos that her claim was "disallow[ed]" because "[o]ne of the terms/conditions of an OIC offer in compromise is that the IRS will keep any refund, including interest, due to the taxpayer because of an overpayment of any tax or other liability, for tax periods extending through the calendar year in which the offer is accepted." (Compl. ¶ 20; Gov't Br. at 3-4.)

## BOLEY FACTS

The relevant facts are undisputed.

Due to the mistaken belief that his agent was filing his tax returns, as of early 2007, Boley owed the IRS approximately $20,000 in income tax, penalties, and interest for tax years 2000, 2001 and 2002.  (Boley Dkt. No. 1: Compl. ¶¶ 7, 10; Dkt. No. 7: Gov't Br. at 2; Dkt. No. 8: Boley Br. at 1.)  In December 2007, Boley sought to satisfy his tax liabilities through an OIC with the IRS. (Compl. ¶ 8; Gov't Br. at 2; Boley Br. at 2.)  On June 2, 2008, the IRS accepted Boley's OIC, which provided that Boley pay a total of $3,000 in satisfaction of his $20,000 tax liability.  (Compl. ¶ 9 &

---

[1/]    (...continued)
of her net income tax liability for 2007 or $600.  26 U.S.C. § 6428(a) (2008).  Since Maniolos did not have any net income tax liability for 2007, she would not have been entitled to any credit.  Under the special rule of 26 U.S.C. § 6428(b), however, Maniolos was entitled to the $300 refund since she had qualifying income of at least $3,000 in 2007.  26 U.S.C. § 6428(b).

Ex. A: OIC; Gov't Br. at 2; Boley Br. at 2).  In addition to the $3,000 payment, OIC section V(f)

provided:  "As additional consideration beyond the amount of my/our offer, the IRS will keep any

refund, including interest, due to me/us because of overpayment of any tax or other liability, for tax

periods extending through the calendar year in which the IRS accepts the offer." (Compl. ¶ 11 & Ex.

A: OIC; Gov't Br. at 1, 2; Boley Br. at 2.)  On October 7, 2008, Boley made the final payment of the

$3,000 under the compromise.  (Compl. ¶ 12; Boley Br. at 2).

       In early 2008, Boley filed a tax return for 2007 reporting a gross income of $38,771

(Compl. ¶ 13; Gov't Br. at 3; Boley Br. at 3.)  Boley owed $36 for the 2007 tax year, which he paid

in April 2008.  (Compl. ¶ 13; Gov't Br. at 3; Boley Br. at 3.)

       Based on his income for 2007, Boley was entitled to a $600 refund under the ESA.

(Compl. ¶ 14; Gov't Br. at 3; Boley Br. at 3-4.)  Rather than issuing Boley a check for $600, the IRS

credited the money as a payment to Boley's unpaid 2000 income tax liability.  (Compl. ¶¶ 15-16;

Gov't Br. at 3; Boley Br. at 4.)  On December 1, 2009, Boley submitted an administrative claim for

the $600, which the IRS has not yet ruled on.  (Compl. ¶¶ 17, 19; Gov't Br. at 3; Boley Br. at 4.)

**PLAINTIFFS' COMPLAINTS AND THE GOVERNMENT'S MOTION TO DISMISS**

       Both Maniolos' and Boley's complaints allege five separate causes of action to recover

the ESA amounts.  The first cause of action is under 28 U.S.C. § 1346(a)(1) for "recovery of internal-

revenue tax alleged to have been erroneously or illegally assessed or collected . . . or any sum alleged

to have been excessive or in any manner wrongfully collected under the internal-revenue laws."

(Maniolos Dkt. No. 2: Compl. ¶ 6; Boley Dkt. No. 1: Compl. ¶ 6.)  The  second and third causes of

action are exactly the same as the first, but relate to the 2007 and 2008 tax years, respectively. (Maniolos Compl. ¶¶ 22, 25; Boley Compl. ¶¶ 21, 24.)  The fourth cause of action is under 28 U.S.C. § 1346(a)(2) alleging that the IRS breached the OIC when it retained the ESA amounts.  (Maniolos Compl. ¶¶ 28-31; Boley Compl. ¶¶ 27-30.)  The fifth cause of action is under 26 U.S.C. § 7433(a), alleging that plaintiff is entitled to the ESA amount for actual damages plaintiff sustained when the IRS "recklessly or intentionally, or by reason of negligence, disregarded the Internal Revenue Code" by applying the ESA amount to plaintiff's tax liability.  (Maniolos Compl. ¶¶ 32, 36-37; Boley Compl. ¶¶ 31, 35-36.)

The Government has moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) (Maniolos Dkt. No. 10: Gov't Notice of Motion; Boley Dkt. No. 6: Gov't Notice of Motion) on the ground that, pursuant to the ESA, the ESA amount was deemed a refund for an overpayment of plaintiff's 2007 taxes and therefore the IRS properly retained it under the OIC.  (Maniolos Dkt. No. 11: Gov't Br. at 4-11; Maniolos Dkt. No. 16: Gov't Reply Br. at 2-6; Boley Dkt. No. 7: Gov't Br. at 4-9; Boley Dkt. No. 9: Gov't Reply Br. at 2-6.)[2]

---

[2]    The parties agree "that if the First Cause of Action is dismissed for failure to state a claim, the remaining causes of action are also properly dismissed." (Maniolos Gov't Br. at 4; Boley Gov't Br. at 4; see Maniolos Br. at 4-5 n.5; Boley Br. at 5 n.5.)

## ANALYSIS

## I.    THE STANDARDS GOVERNING A MOTION TO DISMISS

### A.    The Twombly-Iqbal "Plausibility" Standard

In two decisions in the last few years, the Supreme Court significantly clarified the standard for a motion to dismiss, as follows:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  As the Court held in Twombly, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"
>
> Two working principles underlie our decision in Twombly.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."  Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009) (citations omitted & emphasis added) (quoting

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556-57, 570, 127 S. Ct. 1955, 1965-66, 1974 (2007)

(retiring the Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957), pleading standard that

required denying a Rule 12(b)(6) motion to dismiss "unless it appears beyond doubt that the plaintiff

can prove no set of facts in support of his claim which would entitle him to relief.")).[3]

## B.    **Consideration Of Documents Attached To Or Referred To In The Complaint**

A Rule 12(b)(6) motion to dismiss challenges only the face of the pleading.  Thus,

in deciding such a motion to dismiss, "the Court must limit its analysis to the four corners of the

complaint." Vassilatos v. Ceram Tech Int'l, Ltd., 92 Civ. 4574, 1993 WL 177780 at *5 (S.D.N.Y.

---

[3]    Accord, e.g., Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009); Lindner v. Int'l Bus. Machs. Corp., 06 Civ. 4751, 2008 WL 2461934 at *3 (S.D.N.Y. June 18, 2008); Joseph v. Terrence Cardinal Cooke Health Care Ctr., 07 Civ. 9325, 2008 WL 892508 at *1 (S.D.N.Y. Apr. 2, 2008); Elektra Entm't Group, Inc. v. Barker, 551 F. Supp. 2d 234, 237 (S.D.N.Y. 2008); Edison Fund v. Cogent Inv. Strategies Fund, Ltd., 551 F. Supp. 2d 210, 216-17 (S.D.N.Y. 2008); Diana Allen Life Ins. Trust v. BP P.L.C., 06 Civ. 14209, 2008 WL 878190 at *3 (S.D.N.Y. Mar. 31, 2008).

May 19, 1993) (citing <u>Kopec</u> v. <u>Coughlin</u>, 922 F.2d 152, 154-55 (2d Cir. 1991)).[4]   The Court, however, may consider documents attached to the complaint as an exhibit or incorporated in the complaint by reference.  <u>E.g.</u>, <u>ATSI Commc'ns, Inc.</u> v. <u>Shaar Fund, Ltd.</u>, 493 F.3d 87, 98 (2d Cir. 2007); <u>Chambers</u> v. <u>Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002) ("Because this standard has been misinterpreted on occasion, we reiterate here that a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough."); <u>Rothman</u> v. <u>Gregor</u>, 220 F.3d 81, 88 (2d Cir. 2000) ("For purposes of a motion to dismiss, we have deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . .").[5]

---

[4]     <u>Accord</u>, <u>e.g.</u>, <u>Faulkner</u> v. <u>Beer</u>, 463 F.3d 130, 134 (2d Cir. 2006); <u>Aniero Concrete Co.</u> v. <u>N.Y.C. Constr. Auth.</u>, 94 Civ. 3506, 2000 WL 863208 at *31 (S.D.N.Y. June 27, 2000); <u>Six W. Retail Acquisition, Inc.</u> v. <u>Sony Theatre Mgmt. Corp.</u>, 97 Civ. 5499, 2000 WL 264295 at *12 (S.D.N.Y. Mar. 9, 2000) ("When reviewing the pleadings on a motion to dismiss pursuant to Rule 12(b)(6), a court looks only to the four corners of the complaint and evaluates the legal viability of the allegations contained therein.").

When additional materials are submitted to the Court for consideration with a 12(b)(6) motion, the Court must either exclude the additional materials and decide the motion based solely upon the complaint, or convert the motion to one for summary judgment under Fed. R. Civ. P. 56.  <u>See</u> Fed. R. Civ. P. 12(b); <u>Friedl</u> v. <u>City of N.Y.</u>, 210 F.3d 79, 83 (2d Cir. 2000); <u>Fonte</u> v. <u>Bd. of Managers of Cont'l Towers Condo.</u>, 848 F.2d 24, 25 (2d Cir. 1988).

[5]     <u>See also</u>, <u>e.g.</u>, <u>Yak</u> v. <u>Bank Brussels Lambert</u>, 252 F.3d 127, 130 (2d Cir. 2001) (citing <u>Cortec Indus., Inc.</u> v. <u>Sum Holding L.P.</u>, 949 F.2d 42, 47 (2d Cir. 1991), <u>cert. denied</u>, 503 U.S. 960, 112 S. Ct. 1561 (1992)); <u>Paulemon</u> v. <u>Tobin</u>, 30 F.3d 307, 308-09 (2d Cir. 1994); <u>Brass</u> v. <u>Am. Film Techs., Inc.</u>, 987 F.2d 142, 150 (2d Cir. 1993).

"However, before materials outside the record may become the basis for a dismissal, several conditions must be met.  For example, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exists no material disputed issue of fact regarding the relevance of the document."  <u>Faulkner</u> v. <u>Beer</u>, 463 F.3d at 134 (citations omitted).  In this case, the Court refers only to the OICs between plaintiffs and the IRS, attached to plaintiffs' complaints (as Exhibit A).

## II.   THE IRS PROPERLY RETAINED THE ECONOMIC STIMULUS MONEY; PLAINTIFFS' COMPLAINTS ARE DISMISSED

Plaintiffs' claims rely on the assertion that the IRS was not entitled to the ESA rebates under the terms of the OICs.  (Maniolos Dkt. No. 2: Compl. ¶¶ 6, 22, 25, 28-31, 36-37; Boley Dkt. No. 1: Compl. ¶¶ 6, 21, 24, 27-30, 35-36.)  Maniolos asserts that she is entitled to the ESA rebate since it was a rebate for the 2008 tax year and not subject to the terms of her 2007 OIC.  (Maniolos Dkt. No. 12: Maniolos Br. at 5, 20-25.)[6/]  Both plaintiffs argue that, even if the rebate was for the constructive overpayment of 2007 taxes, the OIC only entitled the IRS to retain refunds based on an actual overpayment.  (Maniolos Br. at 5, 6-20; Boley Dkt. No. 8: Boley Br. at 5-20.)  The Government, on the other hand, contends that the ESA provided the rebate as an advance refund for an overpayment of 2007 taxes (Maniolos Dkt. No. 11: Gov't Br. at 5-7, 10-11; Maniolos Dkt. No.

---

[6/]      Although both plaintiffs are represented by the same counsel, Boley's brief does not raise this argument.  (<u>See generally</u> Dkt. No. 8: Boley Br.)

16: Gov't Reply Br. at 5-6)[7/] and that the OICs allowed the IRS to retain all refunds based on 2007

overpayments.  (Gov't Br. at 7-10; Gov't Reply Br. at 2-5.)

### A.   Background:  Passage of the Economic Stimulus Act ("ESA") and Bankruptcy Court Interpretations

On February 13, 2008, the ESA was enacted to help stimulate the economy through

recovery rebates.  See Economic Stimulus Act of 2008, Pub. L. No. 110-185, 122 Stat. 613, 613

(2008) (codified as amended in scattered subsections of 26 U.S.C.) ("An Act [t]o provide economic

stimulus through recovery rebates to individuals, incentives for business investment, and an increase

in conforming and FHA loan limits.").

Several bankruptcy courts have ruled that the ESA provided the rebate as an advance

refund for an overpayment of 2007 taxes.  See, e.g., In re Smith, 393 B.R. 205, 208 (Bankr. S.D. Ind.

2008) ("Thus, the 2008 Act creates the fiction, that the [taxpayers] overpaid their 2007 taxes in the

amount of the [ESA rebate], based on information contained within their 2007 tax return.

Consequently, the [ESA rebate] constitutes a tax refund for the [taxpayers'] 2007 taxes.") (emphasis

omitted);  In re Lacy, No. 08-1641-AJM-7A, 2008 WL 4000176 at * 3 (Bankr. S.D. Ind. Aug. 28,

2008) (same); In re Alguire, 391 B.R. 252, 254 (Bankr. W.D.N.Y. 2008) (The ESA "unequivocally

ties the checks to the 2007 Income Tax Liability. It declares that what the taxpayer is to receive in

the check is to be viewed as an extra payment on the 2007 tax liability. . . . The incentive amounts

---

[7/]     Because the Government raised the same arguments in both cases, this Opinion only will cite
to the Government's briefs in Maniolos' case.

are deemed by statute to have been paid, and when Congress wishes to create a fictional payment

or overpayment of 2007 taxes, that is law, not to be questioned by this Court.").

        Other bankruptcy courts have found that the ESA rebate was not an advance tax

refund or credit.  See, e.g., In re Woolridge, 393 B.R. 721, 733 (Bankr. D. Idaho 2008) ("However,

it would be nonsensical for the Court to consider payments made under the Act to be advance

payments on 2008 tax refunds, when individuals who are not required to even file an income tax

return – and are thus not eligible for tax refunds – may receive a stimulus payment under the Act.");

In re Schwenke, No. 08-60380-7, 2008 WL 4381822 at *5 (Bankr. D. Mont. Sept. 25, 2008) ("This

Court adopts the reasoning in Wooldridge, with its references to Lambert, and likewise concludes

that the economic stimulus payment in the instant case is not an advance on 2008 tax refund . . . .").

**B.**    **The ESA Rebate Was a Refund of 2007 Taxes**

        The language of the ESA provides two possible mechanisms for delivering the

recovery rebate to individual taxpayers.  Subsection (a) of the ESA entitles eligible individuals to

a credit for the 2008 tax year in the "amount equal to the lesser of – (1) net income tax liability, or

(2) $600. . . ."  26 U.S.C. § 6428(a)(1)-(2).  Section 6428(b) provides for a minimum rebate of $300

by providing that "the amount determined under subsection (a) shall not be less than $300 . . . ."

        In order to distribute this credit before 2008 taxes were due and thereby stimulate the

economy sooner, subsections (f) and (g) provide that those taxpayers who would have been eligible

for a 2008 tax credit are deemed to have overpaid their 2007 taxes and are entitled to an advance

refund.  Specifically, subsection (f)(1) reduces the value of the 2008 tax credit by the amount of the credit or refund allowed under subsection (g):

> (f) Coordination with advance refunds of credit. –
>
>> (1)  In general. – The amount of credit which would (but for this paragraph) be allowable under this section shall be reduced (but not below zero) by the aggregate refunds and credits made or allowed to the taxpayer under subsection (g).

26 U.S.C. § 6428 (f)(1).  Subsection (g)(1) provides that, if the taxpayer filed taxes for 2007, the ESA treats it as if the taxpayer overpaid the 2007 tax in an amount equal to the advance refund amount:

> (g) Advance refunds and credits. –
>
>> (1)  In general. – Each individual who was an eligible individual for such individual's first taxable year beginning in 2007 shall be treated as having made a payment against the tax imposed by chapter 1 for such first taxable year in an amount equal to the advance refund amount for such taxable year.

26 U.S.C. § 6428(g)(1).  The "advance refund amount" is defined in subsection (g)(2) as "the amount that would have been allowed as a credit under this section for such first taxable year if this section (other than subsection (f) and this subsection) had applied to such taxable year."  26 U.S.C. § 6428(g)(2).

In other words, while subsection (a) creates a 2008 tax credit, the value of the credit is reduced in subsection (f) by the allowable refund and credit under subsection (g).  In order to calculate this allowable refund and credit, subsection (g)(2) determines what 2007 tax credit would have been available if the ESA had provided a credit for 2007 taxes.  Where the value of this

allowable amount is equal to the 2008 tax credit under subsection (a), the tax credit is eliminated.

Subsection (g)(1) creates the fiction that the taxpayer overpaid 2007 taxes by the allowable refund

and credit amount, and the rebate is treated as an advance refund of this constructive overpayment.

See In re Smith, 393 B.R. at 208 ("[T]he ESR [i.e., ESA rebate] is a credit towards payment of 2008

tax, but such 2008 credit is reduced by the amount of the ESR if the taxpayer files a 2007 return that

qualifies for the full ESR in 2008.  In such case, the 2008 credit is eliminated and instead the ESR

is treated as payment against 2007 tax.") (emphasis & fn. omitted); accord, e.g., In re Lacy, 2008 WL

4000176 at *2.[8/]  To facilitate the distribution of this rebate and stimulate the economy, subsection

---

[8/]     The interplay between the 2008 credit and the 2007 advance refund is explained by the Joint
Committee on Taxation as follows:

> Most taxpayers will receive this credit in the form of a check issued by the
> Department of the Treasury.  The amount of the payment will be computed in the
> same manner as the credit, except that it will be done on the basis of tax returns filed
> for 2007 (instead of 2008).  It is anticipated that the Department of the Treasury will
> make every effort to issue all payments as rapidly as possible to taxpayers who timely
> file their 2007 tax returns. . . .

> Taxpayers will reconcile the amount of the credit with the payment they
> receive in the following manner.  They will complete a worksheet calculating the
> amount of the credit based on their 2008 income tax return.  They will then subtract
> from the credit the amount of the payment they received in 2008.  For many
> taxpayers, these two amounts will be the same.  If, however, the result is a positive
> number (because, for example, the taxpayer paid no tax in 2007 but is paying tax in
> 2008), the taxpayer may claim that amount as a refundable credit against 2008 tax
> liability.  If, however, the result is negative (because, for example, the taxpayer paid
> tax in 2007 but owes no tax for 2008), the taxpayer is not required to repay that
> amount to the Treasury.  Otherwise, the checks have no effect on tax returns filed for
> 2008; the amount is not includible in gross income and it does not otherwise reduce
> the amount of withholding.

(continued...)

(g)(3) directs that any refund or credit for the overpayment should be made "as rapidly as possible." 26 U.S.C. § 6428(g)(3).

In the present cases, the ESA provided plaintiffs with a tax credit for 2008 taxes. Because, however, plaintiffs filed a tax return for 2007 (see pages 3, 5 above), subsections (f) and (g) reduce their tax credit by the value of the allowable refund and credit for 2007 ($300 for Maniolos[9/] and $600 for Boley). Accordingly, plaintiffs' 2008 tax credit was eliminated and the money they received was an advance refund for the constructive overpayment of 2007 taxes.

Maniolos relies on Sticka v. Lambert (In re Lambert), 283 B.R. 16 (9th Cir. B.A.P.

---

[8/]      (...continued)
          . . . . Payment of the credit (or the check) is treated, for all purposes of the
          Code, as a payment of tax. Any resulting overpayment under this provision is subject
          to the refund offset provisions, such as those applicable to past-due child support
          under Section 6402 of the Code.

Joint Committee on Taxation, Technical Explanation of the Revenue Provisions of H.R. 5140, the "Economic Stimulus Act of 2008" as passed by the House of Representatives and the Senate on February 7, 2008, at 4-5 (JCX-16-08, Feb. 8, 2008) (fn. omitted) (available at www.jct.gov). While the technical explanation is not legislative history, it is indicative of the intent behind the ESA. See Hutchinson v. Comm'r, 765 F.2d 665, 669-70 (7th Cir. 1985) (ruling that, while the Joint Committee on Taxation's General Explanation of the Tax Reform Act of 1976 was not legislative history, "[n]evertheless, such explanations are highly indicative of what Congress did, in fact, intend."); Estate of Wallace v. Comm'r, 965 F.2d 1038, 1050 n.15 (11th Cir. 1992) ("We cite the General Explanation not as an expression of legislative intent, as it was prepared by committee staff after enactment of the statute, but as a valuable aid to understanding the statute. We accord it no weight as binding authority on legislative intent.").

[9/]      Maniolos did not have any net income tax liability for 2007. (Maniolos Compl. ¶ 13; Maniolos Gov't Br. at 3; Maniolos Br. at 3.) Therefore, had the ESA applied to the 2007 tax year, Maniolos would have received a $300 tax credit under the special rule of 26 U.S.C. § 6428(b) because she had qualifying income of at least $3,000 in 2007.

2002), for the proposition that subsection (g) does not create an advance refund for 2007 taxes, but rather uses the 2007 tax income to determine the value of the 2008 rebate.  (E.g., Maniolos Br. at 20-23.)  In Lambert, the court addressed the Economic Growth and Tax Relief Reconciliation Act of 2001 ("2001 Tax Act")[10/] and found that it amended subsection (e) of former 26 U.S.C. § 6428[11/] to

_____

[10/]     Pub. L. No. 107-16, 115 Stat. 42 (2001)  (codified as amended in scattered subsections of 26 U.S.C.).

[11/]     In relevant part, subsection (e) of former 26 U.S.C. § 6428 provided as follows:

> (e) Advance refunds of credit based on prior year data.--

>> (1) In general.--Each individual who was an eligible individual for such individual's first taxable year beginning in 2000 shall be treated as having made a payment against the tax imposed by chapter 1 for such first taxable year in an amount equal to the advance refund amount for such taxable year.

>> (2) Advance refund amount.--For purposes of paragraph (1), the advance refund amount is the amount that would have been allowed as a credit under this section for such first taxable year if--

>>> (A) this section (other than subsections (b) and (d) and this subsection) had applied to such taxable year, and

>>> (B) the credit for such taxable year were not allowed to exceed the excess (if any) of--

>>>> (i) the sum of the regular tax liability (as defined in section 26(b)) plus the tax imposed by section 55, over

>>>> (ii) the sum of the credits allowable under part IV of subchapter A of chapter 1 (other than the credits allowable under subpart C thereof, relating to refundable credits).

26 U.S.C. § 6428(e) (as amended March 9, 2002).

allow for a 2001 tax credit based on 2000 tax information:

> The title of subsection (e) indicates that the Act authorized an advance payment in year-2001 of anticipated tax refund based on year-2000's data.  The refund is "advance" because, upon the Act's enactment, year-2001 taxes were not yet due. Sections (e)(1) and (2) then proceed to lay out how the Relief Check amount is to be calculated.  Section (e)(1) assumes that each eligible individual in year-2000 has paid his or her taxes, in an amount equal to the refund such individual would have received if the Act had applied in year-2000.  Section (e)(2) then treats that year-2000 amount as the year-2001 advance refund amount.  By saying that the advance refund amount is the amount that "would have" been allowed as a credit for tax year 2000 if the Act had applied then, Congress implied that the refund does not apply to tax year 2000.  The year-2000 tax information is therefore only used as a way to calculate the year-2001 refund.  Together, the two sections indicate that Congress intended to use an individual's year-2000 tax liability to calculate the amount of his or her Relief Check issued in 2001.

In re Lambert, 283 B.R. at 19-20 (fn. omitted).  Plaintiffs argue that subsection (g) of the current 26 U.S.C. § 6428 should be interpreted to create a 2008 tax refund, albeit based on 2007 tax information.  (Maniolos Br. at 20-23).

Maniolos' reliance on Lambert is misplaced.  Ninth Circuit precedent is not binding on this Court.  See, e.g., Parrish v. Sollecito, 280 F. Supp. 2d 145, 157 (S.D.N.Y. 2003) ("[A]s this issue has not been resolved by the Second Circuit, such [Eleventh Circuit] precedent is not controlling in this Circuit and this Court is not bound by it."); Consol. Rail Corp. v. Ted Sobiech Farms, 717 F. Supp. 1062, 1063 (S.D.N.Y. 1989) ("As a preliminary matter, this court is not bound by the prevailing precedent in the Seventh Circuit.").

Moreover, despite similar language, there is a key difference between the Acts.  The 2001 Tax Act was enacted on June 7, 2001 (see Pub. L. No. 107-16, 115 Stat. 42), about two months after the April 16, 2001, deadline for filing 2000 taxes.  Consequently, if the 2001 Tax Act rebate

was for an overpayment of 2000 taxes, it would not have been called an "advance refund" since the IRS had already started distributing refunds for overpayments of 2000 taxes. Since some of the 2000 tax refunds were already dispensed, the fastest way to deliver the new rebate to taxpayers was through an advance refund of the 2001 credit. This advance payment therefore had to be based on year 2000 tax information because 2001 taxes were not due yet. See 26 U.S.C. § 6428(e) (as amended Mar. 9, 2002) (entitled "Advance refunds of credit based on prior year data.").

The ESA, on the other hand, was enacted on February 13, 2008. See Pub. L. No. 110-185, 122 Stat. 613. As of that date, a refund for 2007 taxes would have been considered advanced since it was two months before 2007 taxes were even due. Therefore, the quickest way to deliver the advance ESA recovery rebate to the taxpayer was through an advance refund of 2007 taxes. Given this distinction between the Acts, Lambert is distinguishable.

### C.    The OIC is a Settlement Agreement, Interpreted Under Principles of Contract Law

An OIC is a settlement agreement between the taxpayer and the IRS compromising unpaid taxes, and as such is construed according to principles of contract law. See, e.g., United States v. Lane, 303 F.2d 1, 4 (5th Cir. 1962) ("It has long been settled that an agreement compromising unpaid taxes is a contract and, consequently, that it is governed by the rules applicable to contracts generally."); Red Ball Interior Demolition Corp. v. Palmadessa, 173 F.3d 481, 484 (2d

Cir. 1999) (It is well-settled that "[s]ettlement agreements are contracts and must therefore be construed according to general principles of contract law.").[12/]

Because the OIC is a contract involving the United States, its interpretation and construction is governed by federal common law.  See, e.g., United States v. Basin Elec. Power Coop., 248 F.3d 781, 796 (8th Cir. 2001) ("Federal common law governs the interpretation and construction of a contract between the United States and another party."), cert. denied, 534 U.S. 1115, 122 S. Ct. 924 (2002); Up State Fed. Credit Union v. Walker, 198 F.3d 372, 375 n.4 (2d Cir. 1999) ("'[C]ontracts with the government are governed by federal common law . . .'").

"'[I]n developing federal common law in an area, [a court] may look to state law.'" Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 316 (2d Cir. 2006); accord, e.g., Barnes v. Am. Int'l Life Assurance Co., 681 F. Supp. 2d 513, 520 (S.D.N.Y. 2010) (Chin, D.J.) ("[I]n developing federal common law, the federal courts may look to state law . . . ."); E.E.O.C. v. Fed. Express Corp., 268 F. Supp. 2d 192, 204 (E.D.N.Y. 2003) ("[C]ontracts with the federal government are governed by federal common law . . . which incorporates 'the core principles of the common law of contract[s] that are in force in most states.'").  "When it comes to

---

[12/]    Accord, e.g., Powell v. Omnicom, 497 F.3d 124, 128 (2d Cir. 2007); Omega Eng'g, Inc. v. Omega, S.A., 432 F.3d 437, 443 (2d Cir. 2005); Torres v. Walker, 356 F.3d 238, 245 (2d Cir. 2004); Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525 (2d Cir. 1994); Kowal v. Andy Constr., Inc., No. CV-05-576,  2008 WL 4426996 at *1 (E.D.N.Y. Sept. 25, 2008); Coal. on W. Valley Nuclear Wastes v. Bodman, No. 05-CV-0614, 2007 WL 2892628 at *10 (W.D.N.Y. Sept. 28, 2007) ("[A] stipulation for settlement is a contract, interpreted under general principles of contract law."), aff'd sub nom. Coal. on W. Valley Nuclear Wastes v. Chu, 592 F.3d 306 (2d Cir. 2009).

general rules of contract interpretation, there is little difference between federal common law and New York law . . . ." Barnes v. Am. Int'l Life Assurance Co., 681 F. Supp. 2d at 520; see also, e.g., Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d at 316 (looking to cases interpreting New York contract law in determining whether a contract governed by federal common law was ambiguous).

       "Under New York law 'the initial interpretation of a contract is a matter of law for the court to decide.'  Included in this initial interpretation is the threshold question of whether the terms of the contract are ambiguous." Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, 136 F.3d 82, 86 (2d Cir. 1998) (citations omitted); accord, e.g., W.W.W. Assoc., Inc. v. Giancontieri, 77 N.Y.2d 157, 162, 565 N.Y.S.2d 440, 443 (1990) ("Whether or not a writing is ambiguous is a question of law to be resolved by the courts."); Sutton v. E. River Sav. Bank, 55 N.Y.2d 550, 554, 450 N.Y.S.2d 460, 462 (1982) ("the threshold decision on whether a writing is ambiguous is the exclusive province of the court").[13]

---

[13]    See, e.g., Law Debenture Trust Co. v. Maverick Tube Corp., 595 F.3d 458, 465 (2d Cir. 2010); JA Apparel Corp. v. Abboud, 568 F.3d 390, 396-97 (2d Cir. 2009); Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d at 316; Augienello v. Coast-to-Coast Fin. Corp., 64 Fed. Appx. 820, 821-22 (2d Cir. 2003) (citing Int'l Multifoods Corp. v. Commercial Union Ins. Co., 309 F.3d 76, 83 (2d Cir. 2002)); Lucente v. Int'l Bus. Mach. Corp., 310 F.3d 243, 257 (2d Cir. 2002); Mellon Bank v. United Bank Corp., 31 F.3d 113, 115 (2d Cir. 1994); Norfolk S. Ry. v. Flexi-Van Leasing, Inc., 99 Civ. 0055, 2000 WL 1855112 at *5 (S.D.N.Y. Dec. 18, 2000); Checkrite Ltd. v. Ill. Nat. Ins. Co., 95 F. Supp. 2d 180, 188-89 (S.D.N.Y. 2000); ABC Radio Network, Inc. v. Lens Am., Inc., 97 Civ. 9467, 1999 WL 771360 at *2 (S.D.N.Y. Sept. 28, 1999); Air Support Int'l, Inc. v. Atlas Air, Inc., 54 F. Supp. 2d 158, 165 (E.D.N.Y. 1999); see also, e.g., Commercial Union Ins. Co. v. Flagship Marine Servs., Inc., 190 F.3d 26, 33 (2d Cir. 1999); Haber v. St. Paul Guardian Ins.
(continued...)

"It is axiomatic that where the language of a contract is unambiguous, the parties' intent is determined within the four corners of the contract, without reference to external evidence." Feifer v. Prudential Ins. Co., 306 F.3d 1202, 1210 (2d Cir. 2002); accord, e.g., Rosenblatt v. Christie, Manson & Woods, Ltd., 195 Fed. Appx. 11, 12 (2d Cir. 2006) ("Where, as here, a contract is unambiguous, it is enforced according to its terms, and the court will generally not look 'outside the four corners of the document' to add to or vary it."); United States v. Liranzo, 944 F.2d 73, 77 (2d Cir.1991); Crowley v. VisionMaker, LLC, 512 F. Supp. 2d 144, 152 (S.D.N.Y. 2007); S. N.J. Rail Group, LLC v. Lumbermens Mut. Ins. Co., 06 Civ. 4946, 2007 WL 2296506 at *7 & n.9 (S.D.N.Y. Aug. 13, 2007) (Peck, M.J.) (& cases cited therein); R/S Assoc. v. N.Y. Job Dev. Auth., 98 N.Y.2d 29, 33, 744 N.Y.S.2d 358, 360 (2002) ("Unless the court finds ambiguity, the rules governing the interpretation of ambiguous contracts do not come into play.   Thus, when interpreting an unambiguous contract term [e]vidence outside the four corners of the document . . . is generally inadmissible to add to or vary the writing.  [E]xtrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face.") (ellipsis & brackets in original, citations & quotations omitted) (quoting W.W.W. Assoc. Inc. v.

---

13/    (...continued)
     Co., 137 F.3d 691, 695 (2d Cir. 1998); Sayers v. Rochester Tel. Corp., 7 F.3d 1091, 1094 (2d Cir. 1993); Seiden Assoc., Inc. v. ANC Holdings, Inc., 959 F.2d 425, 429 (2d Cir. 1992); First Indem. of Am. Ins. Co. v. Shinas, 03 Civ. 6634, 2009 WL 3154282 at *5 (S.D.N.Y. Sept. 30, 2009); Berman v. Parco, 986 F. Supp. 195, 209 (S.D.N.Y. 1997) (Wood, D.J. & Peck, M.J.); EJS-ASOC Ticaret ve Danismanlik Ltd. v. AT&T, 886 F. Supp. 331, 334 (S.D.N.Y. 1994); Chase Manhattan Bank, N.A. v. Keystone Distrib. Inc., 873 F. Supp. 808, 811 (S.D.N.Y. 1994).

Giancontieri, 77 N.Y.2d at 162-63, 565 N.Y.S.2d at 443); Weissman v. Sinorm Deli, Inc., 88 N.Y.2d 437, 447, 646 N.Y.S.2d 308, 313 (1996) ("[W]hen parties set down their agreement in a clear, complete document, evidence outside the four corners of the document as to what was actually intended is generally inadmissible.").

Where a contract's language is clear and unambiguous, a court may dismiss a breach of contract claim on a Rule 12(b)(6) motion to dismiss.  See, e.g., Advanced Mktg. Group, Inc. v. Bus. Payment Sys., LLC, 300 Fed. Appx. 48, 49 (2d Cir. 2008) ("'[J]udgment as a matter of law is appropriate if the contract language is unambiguous.'"); Rounds v. Beacon Assoc. Mgmt. Corp., 09 Civ. 6910, 2009 WL 4857622 at *3 (S.D.N.Y. Dec. 14, 2009) ("'Where there is no ambiguity to a contract and the intent of the parties can be determined from the face of the agreement, interpretation is a matter of law, and a claim turning on that interpretation may be resolved on a motion to dismiss.'"); Wurtsbaugh v. Banc of Am. Sec. LLC, 05 Civ. 6220, 2006 WL 1683416 at *5 (S.D.N.Y. June 20, 2006) ("'[I]f an agreement is complete, clear and unambiguous on its face, it must be enforced according to the plain meaning of its terms,' and a breach of contract claim may be dismissed on a Rule 12(b)(6) motion.") (quoting Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co., 375 F.3d 168, 177 (2d Cir. 2004)).

However, "'when the language of a contract is ambiguous, its construction presents a question of fact,' which of course precludes summary dismissal" on a Rule 12(b)(6) motion. Crowley v. VisionMaker, LLC, 512 F. Supp. 2d at 152; accord, e.g., Psenicska v. Twentieth Century Fox Film Corp., 07 Civ. 10972, 08 Civ. 1571, 08 Civ. 1828, 2008 WL 4185752 at *4 (S.D.N.Y.

Sept. 3, 2008) ("Where there are alternative, reasonable interpretations of a contract term rendering it ambiguous, the issue should be submitted to the trier of fact and is not suitable for disposition on a motion to dismiss."); Wurtsbaugh v. Banc of Am. Sec. LLC, 2006 WL 1683416 at *5 ("Where a contract term is ambiguous and material to the breach of contract claim, the claim may not be dismissed for failure to state a claim."); see also, e.g., Eternity Global Master Fund Ltd. v. Morgan Guar. & Trust Co., 375 F.3d at 178 ("Unless for some reason an ambiguity must be construed against the plaintiff, a claim predicated on a materially ambiguous contract term is not dismissable on the pleadings.").  In other words, while a court is not "obliged to accept the allegations of the complaint as to how to construe" a contract, it "should resolve any contractual ambiguities in favor of the plaintiff" on a motion to dismiss.  Subaru Distrib. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005); accord, e.g., Gerritsen v. Glob Trading, Inc., No. 06-CV-3756, 2009 WL 262057 at *4 (E.D.N.Y. Feb. 4, 2009) ("Where, as here, a court is determining whether a plaintiff has adequately stated a cause of action for breach of contract, all contractual ambiguities should be resolved in favor of the plaintiff."); D.C. USA Operating Co. v. Indian Harbor Ins. Co., 07 Civ. 0116, 2007 WL 945016 at *8 (S.D.N.Y. Mar. 27, 2007) ("[W]hen considering a motion to dismiss, courts should resolve any contractual ambiguities in favor of the plaintiff without resorting to parol evidence.").

   "Contract language is not ambiguous if it has a 'definite and precise meaning . . . concerning which there is no reasonable basis for a difference of opinion.'"  Hunt Ltd. v. Lifschultz Fast Freight, Inc., 889 F.2d 1274, 1277 (2d Cir. 1989) (quoting Breed v. Ins. Co. of N. Am., 46

N.Y.2d 351, 355, 413 N.Y.S.2d 352, 355 (1978)).[14]/  Conversely, a contract is ambiguous if it is

reasonably susceptible to more than one meaning.  E.g., Chimart Assoc. v. Paul, 66 N.Y.2d 570, 573,

498 N.Y.S.2d 344, 346 (1986) (to determine if ambiguity exists in contract court must determine

"whether the agreement on its face is reasonably susceptible of more than one interpretation");

Angelino v. Freedus, 69 A.D.3d 1203, 1206, 893 N.Y.S.2d 668, 671 (3d Dep't 2010) ("'A contract

is ambiguous if the language used lacks a definite and precise meaning, and there is a reasonable

basis for a difference of opinion.'"); Fernandez v. Price, 63 A.D.3d 672, 675, 880 N.Y.S.2d 169, 173

(2d Dep't 2009); St. Mary v. Paul Smith's Coll. of Arts & Sciences, 247 A.D.2d 859, 859, 668

N.Y.S.2d 813, 813 (4th Dep't 1998); Hutzel v. U.S. Aviation Underwriters, Inc., 132 A.D.2d 45, 49,

522 N.Y.S.2d 301, 303 (3d Dep't 1987) ("an ambiguity exists . . . when a term 'is capable of more

than one meaning'"), appeal denied, 71 N.Y.2d 804, 528 N.Y.S.2d 829 (1988); see, e.g., JA Apparel

Corp. v. Abboud, 568 F.3d at 396-97; Walk-In Med. Ctrs., Inc. v. Breuer Capital Corp., 818 F.2d

260, 263 (2d Cir. 1987) ("An 'ambiguous' word or phrase is one capable of more than one meaning

when viewed objectively by a reasonably intelligent person who has examined the context of the

---

[14]/        Accord, e.g., Law Debenture Trust Co. v. Maverick Tube Corp., 595 F.3d at 467; JA Apparel
        Corp. v. Abboud, 568 F.3d at 396; Photopaint Techs., LLC v. Smartlens Corp., 335 F.3d 152,
        160 (2d Cir. 2003) ("Contract language is unambiguous when it has a definite and precise
        meaning, unattended by danger of misconception in the purport of the [contract] itself, and
        concerning which there is no reasonable basis for a difference of opinion.") (internal
        quotations omitted); RJE v. Northville Indus. Corp., 329 F.3d 310, 314 (2d Cir. 2003);
        Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1192 (2d Cir. 1996); Sayers v.
        Rochester Tel. Corp., 7 F.3d at 1095; Seiden Assoc., Inc. v. ANC Holdings, Inc., 959 F.2d
        at 428; Norfolk S. Ry. v. Flexi-Van Leasing, Inc., 2000 WL 1855112 at *5; Checkrite Ltd.
        v. Ill. Nat. Ins. Co., 95 F. Supp. 2d at 189; ABC Radio Network, Inc. v. Lens Am., Inc., 1999
        WL 771360 at *3; Air Support Int'l, Inc. v. Atlas Air, Inc., 54 F. Supp. at 165.

entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business."); Health-Chem Corp. v. Baker, 737 F. Supp. 770, 773 (S.D.N.Y. Feb. 26, 1990) ("[A] term is ambiguous when it is 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement . . . .'"), aff'd, 915 F.2d 805 (2d Cir. 1990).[15/]

---

[15/]    See also, e.g., Law Debenture Trust Co. v. Maverick Tube Corp., 595 F.3d at 466 ("An ambiguity exists where the terms of the contract 'could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages, and terminology as generally understood in the particular trade or business.'"); Parks Real Estate Purchasing Group v.  St. Paul Fire & Marine Ins. Co., 472 F.3d 33, 42 (2d Cir. 2006) ("An ambiguity exists where the terms of an insurance contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.") (internal quotations omitted); United Air Lines, Inc. v. Ins. Co. of the State of Pa., 439 F.3d 128, 134 (2d Cir. 2006) (A contract "is ambiguous when it is reasonably susceptible to more than one reading.") (internal quotations omitted); Liberty Surplus Ins. Corp. v.  The Segal Co., 142 Fed. Appx. 511, 513 (2d Cir. 2005); Allianz Ins. Co. v. Lerner, 416 F.3d 109, 113 (2d Cir. 2005) ("An ambiguous term is one that is reasonably susceptible to more than one reading, or one as to which reasonable minds could differ."); Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, 136 F.3d at 86; Sayers v. Rochester Tel. Corp., 7 F.3d at 1095; Goodheart Clothing Co. v. Laura Goodman Enter., Inc., 962 F.2d 268, 272 (2d Cir. 1992); Seiden Assoc., Inc. v. ANC Holdings, Inc., 959 F.2d at 428; Norfolk S. Ry. v. Flexi-Van Leasing, Inc., 2000 WL 1855112 at *5; Checkrite Ltd. v. Ill. Nat. Ins. Co., 95 F. Supp. 2d at 189; Berman v. Parco, 986 F. Supp. at 209 & n.9 (citing cases); Lipari v. Maines Paper & Food Serv., Inc., 245 A.D.2d 1085, 1085, 667 N.Y.S.2d 548, 549 (4th Dep't 1997); Levey v. A. Leventhal & Sons, Inc., 231 A.D.2d 877, 877, 647 N.Y.S.2d 597, 597 (4th Dep't 1996); Arrow Commc'n Labs., Inc. v. Pico Prods., Inc., 206 A.D.2d 922, 922-923, 615 N.Y.S.2d 187, 188 (4th Dep't 1994); Am. Express Bank Ltd. v. Uniroyal, Inc., 164 A.D.2d 275, 277, 562 N.Y.S.2d 613, 614 (1st Dep't 1990) ("A contract should be construed so as to give full meaning and effect to all of its provisions."), appeal denied, 77 N.Y.2d 807, 569 N.Y.S.2d 611 (1991).

Clear contractual language does not become ambiguous simply because the parties to the litigation argue different interpretations.  E.g., Bethlehem Steel Co. v. Turner Constr. Co., 2 N.Y.2d 456, 460, 161 N.Y.S.2d 90, 93 ("Mere assertion by one that contract language means something to him, where it is otherwise clear, unequivocal and understandable when read in connection with the whole contract, is not in and of itself enough to raise a triable issue of fact."), aff'd, 2 N.Y.2d 456, 161 N.Y.S. 2d 90 (1957); Slattery Skanska Inc. v. Am. Home Assurance Co., 67 A.D.3d 1, 14, 885 N.Y.S.2d 264, 274 (1st Dep't 2009) ("That one party to the agreement may attach a particular, subjective meaning to a term that differs from the term's plain meaning does not render the term ambiguous."); Moore v. Kopel, 237 A.D.2d 124, 125, 653 N.Y.S.2d 927, 929 (1st Dep't 1997) ("[A] contract is not rendered ambiguous just because one of the parties attaches a different, subjective meaning to one of its terms."); see, e.g., Law Debenture Trust Co. v. Maverick Tube Corp., 595 F.3d at 467; JA Apparel Corp. v. Abboud, 568 F.3d at 396; Aetna Cas. & Sur. Co. v. Aniero Concrete Co., 404 F.3d 566, 598 (2d Cir. 2005) ("[T]he language of a contract is not made ambiguous simply because the parties urge different interpretations. Nor does ambiguity exist where one party's view strain[s] the contract language beyond its reasonable and ordinary meaning.") (quotations omitted); Photopaint Techs., LLC v. Smartlens Corp., 335 F.3d at 160 ("Unambiguous contract language is not rendered ambiguous by competing interpretations of it urged in litigation.").[16/]

---

[16/]    See also, e.g., Sayers v. Rochester Tel. Corp., 7 F.3d at 1095; Seiden Assoc., Inc. v. ANC Holdings, Inc., 959 F.2d at 428; Metro. Life Ins. Co. v. RJR Nabisco, Inc., 906 F.2d 884, 889 (continued...)

**D.**     **The Terms of the OIC Entitle the IRS to Retain the ESA Rebate**

The Government argues that plaintiffs' complaints should be dismissed because the express language of OIC section V(f) entitled the IRS to "keep any refund . . . because of overpayment of any tax or other liability[] for tax periods extending through the calendar year in which the IRS accepts the offer."  (See pages 3, 5 above.)  As previously discussed (see pages 12-18 above), the ESA rebate was distributed to plaintiffs as a refund for a constructive overpayment of 2007 taxes.  Thus, the clear language of the OIC supports the Government's argument.

Plaintiffs, however, argue that the OIC was written in "colloquial English," not the technical terms of the tax code, and that the plain meaning of "refund" and "overpayment" would not include the constructive overpayment under the ESA.  (Maniolos Dkt. No. 12: Maniolos Br. at 5, 6-20; Boley Dkt. No. 8: Boley Br. at 5-20.)[17/]  Plaintiffs further contend that, to the extent it is unclear

---

16/     (...continued)
(2d Cir. 1990) ("Language whose meaning is otherwise plain is not ambiguous merely because the parties urge different interpretations in the litigation."); Hunt Ltd. v. Lifschultz Fast Freight, Inc., 889 F.2d at 1277; CDR-Wantagh, Inc. v. Shell Oil Co., No. 07-CV-4497, 2009 WL 936672 at *7 (E.D.N.Y. Mar. 31, 2009); Norfolk S. Ry. v. Flexi-Van Leasing, Inc., 2000 WL 1855112 at *6; Checkrite Ltd. v. Ill. Nat. Ins. Co., 95 F. Supp. 2d at 189; ABC Radio Network, Inc. v. Lens Am., Inc., 1999 WL 771360 at *3; Air Support Int'l, Inc. v. Atlas Air, Inc., 54 F. Supp. 2d at 165-66; Berman v. Parco, 986 F. Supp. at 210; EJS-ASOC Ticaret v. AT&T, 886 F. Supp. at 334; Chase Manhattan Bank, N.A. v. Keystone Distrib., Inc., 873 F. Supp. at 811; Broadway Nat'l Bank v. Progressive Cas. Ins. Co., 775 F. Supp. 123, 126 (S.D.N.Y. 1991), aff'd, 963 F.2d 1522 (2d Cir. 1992); Health-Chem Corp. v. Baker, 737 F. Supp. at 773.

17/     In support of plaintiffs' "colloquial English" contention, plaintiffs first refer to OIC section V(e), which provides: "I/We waive and agree to the suspension of any statutory periods of limitation (time limits provided by law) for the IRS assessment of the liability for the periods
(continued...)

whether the OIC uses the plain meaning or tax code meaning of "overpayment," the OIC is ambiguous and should be construed against the IRS, the drafter.  (Maniolos Br. at 14; Boley Br. at 15.)

Plaintiffs' arguments are unavailing because the OIC is created and governed by the tax code.  Section 7122(a) of the tax code authorizes the IRS to enter into an OIC to resolve tax liabilities.  See 26 U.S.C. § 7122(a) ("The Secretary may compromise any civil or criminal case arising under the internal revenue laws . . . .").  Section 7122(d) sets the standards for evaluating whether an OIC should be accepted.  See 26 U.S.C. § 7122(d).  Section 7122(e) provides for administrative review and appeal when an OIC is rejected.  See 26 U.S.C. § 7122(e).

The OIC's text further demonstrates that it is dependant on the tax code, including references to the calculation of interest under § 6601, the required payments under § 7122(c), and the notice of contacting third parties under § 7602.  (Compl. Ex. A: OIC §§ IV, V(a), V(d), V(f), V(l), V(n).)  Additionally, the OIC's privacy act statement states:  "We ask for the information on this form to carry out the internal revenue laws of the United States."  (Compl. Ex A: OIC.)  Thus,

---

17/    (...continued)
identified in Section II."  (Maniolos Br. at 11; Boley Br. at 12; Compl. Ex. A: OIC.)  Second, plaintiffs refer to section V(i), which provides: "The IRS will not remove the original amount of the liabilities from its records until I/we have met all the terms and conditions of the offer" (Maniolos Br. at 11-12; Boley Br. at 12; Compl. Ex. A: OIC.).  Plaintiffs assert that if this provision were written in technical terms it would have stated: "The IRS will not abate any assessment of the liabilities [or post an entry crediting the assessment as paid or no longer enforceable] until I/we have met all the terms and conditions of the offer."  (Maniolos Br. at 12; Boley Br. at 12.)  Third, plaintiffs refer to section V(f) that allows the IRS to "keep any refund" (Compl. Ex. A: OIC) even though, "[i]n technical Code jargon, the IRS does not 'keep' a refund."  (Maniolos Br. at 12; Boley Br. at 12.)

it is clear to anyone who reads it that an OIC is a product of the Code.  Moreover, both Maniolos and Boley were represented by their present tax counsel in submitting their OICs.  (Compl. Ex. A: OIC § IX.)

Consequently, in determining whether there is any ambiguity, the OIC's terms must be evaluated by the tax code's usages and terms.  See, e.g., Kerin v. U.S. Postal Serv., 116 F.3d 988, 992 n.2 (2d Cir. 1997) (Whether a contract is ambiguous "must be considered from the viewpoint of one 'cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'").[18/]

The term "overpayment" in the Code includes constructive overpayments.  Pursuant to § 6401(b)(1), where a refundable credit exceeds tax liability, the extra amount is defined as an overpayment. See 26 U.S.C § 6401(b)(1) ("If the amount allowable as credits under subpart C of part IV of subchapter A of chapter 1 (relating to refundable credits) exceeds the tax imposed by subtitle A . . . the amount of such excess shall be considered an overpayment.").  Section 6402(a) provides for the refunding of overpayments to "the person who made the overpayment" (see 26 U.S.C § 6402(a)), even though, with respect to refundable credits, the taxpayer never actually made an overpayment.  Thus, the only way a taxpayer receives a refund for a refundable credit, such as the

---

[18/]  Plaintiffs argue that "[i]t is apparent that the OIC overrides the provisions of the Internal Revenue Code," since the "IRS contractually foregoes using its various Code-provided collection tools" to collect unpaid tax liabilities.  (Maniolos Br. at 13; Boley Br. at 14.)  As the Government correctly points out, however, "[w]hile an OIC evidences the IRS's decision (with the exception of the 'additional consideration' provision) to forgive past-due taxes, it does not evidence a general waiver of the IRS's statutory rights and definitions or otherwise contain any language overriding the Code."  (Boley Dkt. No. 9: Gov't Reply Br. at 2.)

Earned Income Tax Credit ("EITC"), is through a constructive overpayment.  See Sorenson v. Sec'y of Treasury, 475 U.S. 851, 855, 106 S. Ct. 1600, 1604 (1986) ("An individual who is entitled to an earned-income credit that exceeds the amount of tax he owes thereby receives the difference as if he had overpaid his tax in that amount."); Israel v. United States, 356 F.3d 221, 223-24 (2d Cir. 2004) ("The only way to understand the [EITC] in the context of the tax code, then, is as a constructive overpayment.").

Additionally, the ESA itself uses "overpayment" to include constructive overpayments.  As noted on pages 13-14 above, § 6428(g)(1) creates the fiction that the taxpayer overpaid for 2007 taxes in a specified amount.  Even though this amount only was a constructive overpayment, it is distributed to the taxpayer through subsection (g)(3) as an overpayment of taxes.  See 26 U.S.C. § 6428(g)(3) ("The Secretary shall, subject to the provisions of this title, refund or credit any overpayment attributable to this section as rapidly as possible.").

Given that the precise meaning of overpayment in the tax code includes constructive overpayments, coupled with the OIC's status as a product of the Code, there is no reasonable basis to believe that the OIC's language did not include constructive overpayments.  See, e.g., Law Debenture Trust Co. v. Maverick Tube Corp., 595 F.3d 458, 467 (2d Cir. 2010) ("[T]he court should not find the contract ambiguous where the interpretation urged by one party would 'strain [ ] the contract language beyond its reasonable and ordinary meaning.'"); Hunt Ltd. v. Lifschultz Fast Freight, Inc., 889 F.2d 1274, 1277 (2d Cir. 1989) ("Contract language is not ambiguous if it has 'a definite and precise meaning . . . concerning which there is no reasonable basis for a difference of

opinion.'") (quoting <u>Breed</u> v. <u>Ins. Co. of N. Am.</u>, 46 N.Y.2d 351, 355, 413 N.Y.S.2d 352, 355 (1978)).

Moreover, plaintiffs' argument would create the situation where the ESA rebate is distributed as a constructive overpayment under the Code, but not considered an overpayment with regard to "additional consideration" liabilities under the OIC. A similar argument concerning the EITC was raised by taxpayers and rejected by the Supreme Court in <u>Sorenson</u> v. <u>Secretary of Treasury</u>, 475 U.S. at 859-61, 106 S. Ct. at 1606-07. The taxpayers in <u>Sorenson</u> were entitled to a refund under the EITC since the amount of the credit was greater than their tax liability. <u>Sorenson</u> v. <u>Sec'y of Treasury</u>, 475 U.S. at 853-55, 106 S. Ct. at 1603-04. The IRS, however, retained the refund under the § 6402(c) intercept provision since the taxpayers owed money for overdue child support. <u>Sorenson</u> v. <u>Sec'y of Treasury</u>, 475 U.S. at 855-57, 106 S. Ct. at 1604-05. Although acknowledging that the EITC refund was considered an overpayment under § 6402(a), the taxpayers argued that the term "overpayment" in § 6402(c) did not include the refund since it was only a constructive overpayment. <u>Sorenson</u> v. <u>Sec'y of Treasury</u>, 475 U.S. at 859-61, 106 S. Ct. at 1606-07. The Supreme Court rejected this argument, holding that "identical words used in different parts of the same act are intended to have the same meaning." <u>Sorenson</u> v. <u>Sec'y of Treasury</u>, 475 U.S. at 860, 106 S. Ct. at 1606.

<u>Sorenson</u>'s rational is persuasive here. To the extent that a term is interpreted as having the same meaning in two different parts of the Code, it also should be interpreted as having the same meaning in the Code and in the OIC, which is a product of the tax code. Since the plaintiffs

were only entitled to the ESA rebate because it was considered an overpayment under the tax code, it also should be considered an overpayment under section V(f) of the OIC.

Plaintiffs also argue that allowing the IRS to retain the ESA rebate under the terms of the OIC "defeats the fresh start" that the OIC was intended to give taxpayers. (Maniolos Br. at 17; Boley Br. at 17.) This Court rejects that argument as plaintiffs are hard pressed to explain how, after tens of thousands of dollars of tax liability were satisfied for mere cents on the dollar, the retention of a rebate worth a few hundred dollars somehow "defeats" this fresh start.

Accordingly, this Court finds that OIC section V(f) unambiguously entitled the IRS to retain the ESA rebate.

## CONCLUSION

For the reasons stated above, the Government's motions to dismiss (Maniolos Dkt. No. 11; Boley Dkt. No. 7) are GRANTED.

SO ORDERED.

DATED:      New York, New York
            October 4, 2010

_____
**Andrew J. Peck**
United States Magistrate Judge

Copies to:    Prof. Carlton M. Smith, Esq.
              Jaimie Leeser Nawaday, Esq.

C:\OPIN\MANIOLOS & BOLEY